PEOPLE v. WALLS.

1. CRIMINAL LAW—NO PRESUMPTION THAT DEFENDANT'S CHARACTER IS GOOD OR BAD.
   There is no presumption in criminal cases that defendant's character is good or bad.[1]

2. SAME — SELF-DEFENSE — INSTRUCTIONS — OBJECTION WITHOUT MERIT.
   Objection of defendant's counsel that the correct rule of law was not given by the trial court in his charge to the jury, held, without merit.[2]

3. HOMICIDE — NEW TRIAL PROPERLY DENIED WHERE EVIDENCE SUPPORTS CONVICTION.
   Where there was evidence which, if believed, warranted

[1] Criminal Law, 16 C. J. § 1009; [2] Id., 16 C. J. § 2359.
On presumption as to good character of defendant in criminal case, see note in 46 L. R. A. (N. S.) 342.

the jury in finding the defendant guilty of manslaughter, the trial court was not in error in denying a motion for a new trial on the ground that the verdict is not sustained by the evidence.[3]

4. SAME—WHERE KILLING NOT IN SELF-DEFENSE CONVICTION OF MANSLAUGHTER WARRANTED.

Where there was evidence from which the jury was justified in finding that defendant shot deceased after he had been disarmed and thrown to the ground, and that the fatal shot was not fired in self-defense, a conviction of manslaughter was warranted.[4]

Error to Berrien; White (Charles E.), J.    Submitted January 15, 1925.    (Docket No. 115.)    Decided May 14, 1925.

Edward Walls was convicted of manslaughter, and sentenced to imprisonment for not less than 12 nor more than 15 years in the State prison at Marquette. Affirmed.

*John J. Sterling,* for appellant.

*George H. Bookwalter,* Prosecuting Attorney, for the people.

McDONALD, C. J.    Edward Walls was convicted of manslaughter under an information charging him with having killed and murdered one Pinocle Reddick on the 31st day of August, 1922, at the city of Benton Harbor, Berrien county, Michigan.    The people's testimony tends to show that the two men got into an altercation over some money which defendant had loaned to Reddick; that during the argument the defendant pulled a revolver and began shooting; that Reddick, who was also armed with a revolver, responded by shooting at the defendant; that a number of shots were exchanged; and that finally a bullet from the defendant's revolver pierced the heart of Reddick,

---

[3]Homicide, 30 C. J. § 561; [4]Id., 30 C. J. § 556.

killing him instantly; that Reddick was down with the defendant on top of him when this shot was fired; that having emptied his revolver he then grabbed Reddick's and ran away; that as he ran he turned upon a man who was pursuing and tried to shoot him, but that the revolver did not discharge; that when arrested he told the sheriff that he had grabbed Reddick's revolver and shot him with it. The defendant admitted that he shot Reddick, but insisted that he did so in self-defense. He says that Reddick began the assault by firing the first shot which took effect in his leg, and that after Reddick had fired a second time and twice wounded him, he, the defendant, pulled his revolver and commenced to shoot; that after he had emptied his revolver he dropped it and grappled with Reddick; that they both fell to the ground; that he got Reddick's revolver and ran away; that he saw some one pursuing him and believing it to be Reddick tried to shoot, but that the revolver was empty. When arrested the defendant had three bullet wounds in his body, one in his leg, one in his arm and the other in his hand. The trial resulted in a conviction of manslaughter. A motion for a new trial was made on the ground that the verdict was not sustained by the evidence. The motion was denied. Defendant brings error.

It is first urged that the court erred in refusing to allow counsel, in his argument to the jury, to comment on the defendant's good character, and in instructing the jury that in the trial of a criminal case when no evidence is offered on the subject, the defendant "has no character whatever, either good or bad." The great weight of authority supports the ruling of the circuit judge. There is no presumption in criminal cases that defendant's character is good or bad. As stated by Mr. Wigmore in his work on Evidence, § 290, note 2, "the defendant's character is simply a non-existent quantity in the evidence." The rule

stated by Mr. Wigmore was approved and adopted by
this court in *People* v. *Kemmis,* 153 Mich. 117, and in
*People* v. *Lingley,* 207 N. Y. 396 (101 N. E. 170, 46
L. R. A. [N. S.] 342, Ann. Cas. 1913D, 403). This
question was also discussed at length and the authori-
ties reviewed in a well considered opinion in *Price* v.
*United States,* L. R. A. 1915D, 1070 (132 C. C. A. 1,
218 Fed. 149). Our attention is called to *People* v.
*Woods,* 206 Mich. 11, in which it is claimed the con-
trary rule was announced. The subject was not
directly before the court and was not one of the ques-
tions that passed into judgment in that case. What
was there said was plainly *obiter dictum.* In *People*
v. *Kemmis, supra,* the correct rule was announced and
is controlling of the question in this case.

It is further urged in behalf of the defendant that
the court erred in the charge given relative to the law
of self-defense. The objection is stated by counsel
in his brief as follows:

"The correct rule of law was not announced to the
jury. Self-defense was the ground on which respond-
ent planted his fight for freedom. If he, in good
faith, believed that his life was in danger, or that de-
ceased was about to inflict serious bodily injury upon
him, then respondent had the right to kill deceased
to avoid the impending danger to his person or life.
The court, however, stated to the jury that it was the
sole judge of the reasonableness of the defendant's
apparent or apprehended danger."

That this objection is without merit clearly appears
from the following excerpt of the charge as given:

"It is not necessary to this defense that the danger
should have been actual or real, or that the danger
should have been impending, and immediately about
to follow. * * * The actions and conduct of re-
spondent are to be judged from the circumstances as
they appeared to him at the time. One who is
suddenly attacked by an adversary is not held to fine

231—Mich.—8.

distinctions of judgment as to what is in the mind of his adversary, or what his adversary is about to do, or as to how much force it is necessary for him to use to protect his life or his person from serious bodily harm."

Considered in its entirety, the charge as given was fair and impartial, and correctly stated the rules which the jury was to follow in determining whether the defendant acted in self-defense.

It is further urged in behalf of the defendant that the verdict is not sustained by the evidence, and that the court erred in refusing to grant a new trial on that ground. There is evidence which, if believed, warranted the jury in finding the defendant guilty of manslaughter. The defendant's story as to how he came to have a revolver in his pocket at the time of the shooting is highly improbable, but there is no dispute about the fact that when he went out to look for Reddick that evening he took it from a coat that was hanging in his room and put it into the pocket of the coat which he was wearing. It is conceded that the bullet which entered Reddick's heart produced instant death. The defendant says that he fired his revolver until he had emptied every chamber; that he then dropped it and grappled with Reddick, in an effort to take his gun away from him; that they both went to the ground; that he got the revolver and ran away. If the bullet which entered Reddick's heart produced instant death, it could not have been fired until after Reddick was down and must have come from Reddick's revolver in the hands of defendant before he ran away. Further evidence in support of this conclusion is found in the testimony of the witness who says that he heard Reddick call out, "Take this man off me," and heard one Tom Jackson tell the defendant to get off of him. From this evidence the jury was justified in finding that Reddick was killed after he had been disarmed and thrown to the

ground, and that the fatal shot was not fired in self-defense.

Our examination of the record convinces us that the defendant received a fair and impartial trial. He was well defended by able counsel and was accorded by the court every benefit to which he was entitled under the law.

The judgment of conviction is affirmed.

CLARK, BIRD, SHARPE, MOORE, and FELLOWS, JJ., concurred. STEERE and WIEST, JJ., concurred in the result.